**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CHIBUZOR STANLEY UBA,** | § | |
| | § | |
| | § | **A-20-CV-1163-RP** |
| **v.** | § | **(1:19-CR-78(5)-RP)** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court is Chibuzor Stanley Uba's Motion to Vacate, Set Aside, or Correct

Sentence, Dkt. 198. The undersigned submits this Report and Recommendation pursuant to 28

U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules.

## I. BACKGROUND

On April 2, 2019, Uba was charged with one count of Conspiracy to Commit Money

Laundering. Uba pled guilty via a plea agreement to the Conspiracy to Commit Money Laundering

count, which carries a zero to 20-year term of imprisonment. Dkt. 124. The plea agreement

included an attached Stipulated Judicial Order of Removal, signed by Uba, which would result in

his immediate deportation after he serves any imprisonment imposed by the Court. Dkt. 124-1. It

also included a Federal Rule of Criminal Procedure 11(c)(1)(B) agreement by the Government to

"not recommend at Defendant's sentencing proceeding any sentence of imprisonment that exceeds

36 months." *Id.* at 5. The plea agreement included a waiver of Uba's appellate and collateral attack

rights except in cases of prosecutorial misconduct and ineffective assistance of counsel. *Id.* at 6-7.

1

During his plea hearing, Uba, who was under oath, confirmed that he had enough time to discuss his plea with his attorney, discussed anything Uba thought would be important for his attorney to know, and was satisfied with his attorney's representation of him. Dkt. 205-2 at 6:6-19. Uba admitted having discussed the charge he was facing with his attorney and understanding the maximum possible punishment for that offense. *Id.* at 13:15-15:6. Uba confirmed having read the entire plea agreement himself, meeting with his attorney to go over the plea agreement, understanding the plea agreement, and agreeing to the plea agreement. *Id.* at 7:4-18. Uba specifically acknowledged understanding that he was made two different plea offers and that, because he "was going to get deported … the only logical thing for [him] to do is take the 36 months." *Id.* at 10:1-10. After the Government summarized the terms of the plea agreement, Uba confirmed that he understood it and that the summary was accurate. *Id.* at 11:8-13. Uba confirmed his understanding that the District Judge would not be bound by the Government's recommendation, that his plea agreement included a waiver of his appeal rights, and the plea agreement included waiver of collateral attack unless there was ineffective assistance of counsel or prosecutorial misconduct. *Id.* at 12:3-13:5. Uba was informed by the magistrate judge that the Sentencing Guidelines range would be calculated by the District Judge and Uba confirmed having spoken to his attorney about how his sentence would be determined and not having any questions about sentencing. *Id.* at 15:14-16:24. Uba engaged in the process and asked the magistrate judge a question about his deportation. *Id.* 19:3-17. Uba acknowledged he understood the charge against him, wished to plead guilty, and was making the plea freely, voluntarily, without force or coercion, and without any promises as to what his sentence would be outside of what was provided in the plea agreement. *Id.* at 25:1-26:3. Finally, Uba acknowledged the factual basis contained in the plea agreement and agreed that the facts contained therein were correct. *Id.* at 26:4-17.

The presentencing report ("PSR") found that Uba conspired with at least six other persons to launder the proceeds of Business Email Compromise scams and "Romance Fraud" schemes. Dkt. 152, ¶¶ 14, 17. The PSR notes text messages between Uba and a co-conspirator, Odibobhahemen, discussing "the collection, portioning, and movement of the fraud proceeds." *Id.* ¶ 17.

Uba and Odibobhahemen discussed the movement of fraud funds to accounts controlled by other co-conspirators. *Id.* ¶ 18. Uba communicated with another co-conspirator, via text coordinating and discussing "the collection of laundered funds." *Id.* ¶ 20. Based on these several communications and the amount of fraud funds collected by the several co-conspirators, the PSR concluded that Uba was "accountable for the intended loss amount of $10,032,381.52 for guideline purposes" and Uba was "held jointly and severally liable for the restitution amount of $5,378,292.03 (actual loss)." *Id.* ¶ 24. Uba was deemed an "average participant[]." *Id.* Uba's Sentencing Guideline imprisonment range was calculated to be 108 months to 135 months. *Id.* ¶ 69.

On January 2, 2020, Uba's attorney submitted objections to the PSR to the probation officer. Dkt. 205-2. Uba objected to the PSR holding him accountable for the entire intended loss amount ($10,032,381.52) and argued that the evidence did not support that finding. *Id.*

A few days after submitting Uba's objections, Uba's attorney conferred with the Government about the objections. Dkt. 205-3. That conference revealed that Judge Pitman had expressed reservations about similar lower sentence plea agreements in fraud cases in the past and that objections to the PSR might cause Judge Pitman to impose a higher sentence. *Id.* United States Probation confirmed this. *Id.* Because the plea agreement was non-binding, and in light of the possibility of a higher sentence because of the range of relevant conduct the District Court could

consider, Uba's attorney discussed the issue with Uba, and they determined the safer course of conduct was to withdraw any objections to the PSR. *Id.* at 5-6. On January 21, 2020, Uba's counsel withdrew the objections to the PSR. *Id.* at 6.

Sentencing was held on January 30, 2020. Prior to sentencing, Uba's counsel filed a sentencing memorandum, Dkt. 159, as did the Government, Dkt. 154. In his sentencing memorandum, Uba asked for a sentence of one year and a day and, among other arguments, argued that sentence was justified by his "smaller role in the conspiracy, the lack of evidence of his personally using fraudulent passports or personally opening fraudulent bank accounts, and his fewer instances of direct involvement with the conspiracy." Dkt. 159.

During sentencing, Uba acknowledged having had sufficient time with his attorney to prepare for sentencing and discuss the PSR and the guidelines. Dkt. 205-4 at 2:21-3:12. After an explanation from the District Judge, Uba acknowledged understanding the maximum possible punishment he faced and the recommended sentence from the Federal Sentencing Guidelines. *Id.* at 4:9-5:8. Uba had the opportunity to speak and exercised that right, apologizing for his actions, asking the Court for forgiveness, and claiming that the "greatest punishment is my deportation." *Id.* at 5:23-7:13. Uba did not raise any of the claims now asserted in his 2255. *Id.* Uba's attorney again advocated for his client and requested a sentence of a year and a day. *Id.* at 8:16-14:4.

The Court noted the victims of the fraud schemes who had "overnight lost their lifesavings, everything they've worked hard for" and the Court's general position that even a guideline sentence—in this case, 108-135 months—would not be excessive and might even be less than adequate. *Id.* at 14:6-15:24. However, despite its reservations, the Court accepted the plea agreement and sentenced Uba to 36 months custody, followed by 3 years of supervised release, and $5,378,292.03 in restitution. *Id.* The Court also reminded Uba of his right to appeal, unless the

plea agreement included a waiver of appeal. *Id.* at 16:5-9. Uba's plea agreement contained a waiver of his right to appeal.

Uba's attorney, Bristol Myers, states in his Affidavit that on February 4, 2020, after the sentencing hearing, he met with Uba. Dkt. 205-3. Myers attests that during that meeting, Uba did not raise the subject of bringing an appeal. *Id.* On October 30, 2020, the District Court accepted Uba's plea. Dkt. 136.

On November 23, 2020, Uba filed his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Dkt. 198. In his Motion, Uba asserts ineffective assistance of counsel claiming his attorney: (1) failed to properly inform Uba of the consequences of his guilty plea; (2) failed to object to the use of relevant conduct in calculating his Sentencing Guideline Range; and (3) failed to adequately consult with Uba about his right to appeal or filing a notice of appeal.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude … and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error

could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 668. A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Strickland*, 466 U.S. at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

In the context of a guilty plea, to satisfy the "prejudice" requirement, the defendant must show that "there is a reasonable probability that the defendant 'would not have pleaded guilty and would have insisted on going to trial.'" *Valdez*, 973 F.3d at 403 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Movant bears the burdens of proof and persuasion. *United States v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990). "A failure to establish either deficient performance or resulting prejudice defeats the claim." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

### III. ANALYSIS

First, Uba asserts that his attorney Bristol Myers was ineffective for failing to adequately explain the consequences of pleading guilty to him. He argues:

> Myers decided it would be best to not offer any evidence or arguments to defend me. There was significant evidence that needed to be presented. Rather, I was presented with a plea agreement and was made to feel that I had no choice but to sign it. Further, the details of its contents were not reviewed, discussed, or explained

to me. There is no doubt that I was not informed of the contents of the plea and in particular, I did not have any idea of the magnitude of the sentence that I would face upon signing the plea agreement. Had I been aware of the contents of the agreement and the potential impact that it would have against me, I would not have signed it.

Dkt. 198 at 4.

Uba's claims are refuted by his sworn admissions and statements during the guilty plea hearing before the magistrate judge. Uba testified under oath that prior to pleading guilty, he met with Myers, went over the plea agreement with him, and that he felt like he understood the agreement. Dkt. 205-1 at 7. During the hearing, the United States Attorney, Mike Galdo, explained that Uba had stipulated to a plea offer with a 36-month cap and a stipulated judicial order of removal versus a different plea offer of a 60-month cap with no stipulated judicial order of removal. *Id.* at 9. Galdo wanted to make certain that Uba was aware of the two different plea offers. When asked by the magistrate judge, Uba stated, "I was made known that regardless, I was going to get deported. So the only logical thing for me to do is to take the 36 months." *Id.* at 10. Additionally, during Uba's guilty plea hearing, the magistrate judge exhaustively reviewed the plea agreement with Uba, and, under oath, Uba stated he was aware of the maximum sentence of twenty years, the fines that might be imposed, and the fact that the Government and not the Court was bound by the terms of the agreement. Dkt. 205-1 at 12-14. The magistrate judge confirmed that no prediction or promise was made as to what his sentence would be. *Id.* Ultimately, Uba signed the plea agreement confirming he read, discussed, and understood its contents. The agreement included a statement that Uba's plea was voluntary and that he was "had sufficient time to discuss the case with Defendant's attorney, and is satisfied with the advice given by counsel." Dkt. 124. At sentencing, Uba reaffirmed he reviewed with his attorney and understood the PSR and Sentencing Guidelines as applied to his case. Dkt. 205-4.

Uba presents no evidence to refute his previously made statements or signature. *See United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995) (Sworn statements in "open court during a plea hearing carry a strong presumption of verity."); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (Any documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight."). Uba is college-educated, speaks English, and was gainfully employed in information technology prior to his arrest. Dkt. 205-3. Uba has not shown he is entitled to relief on this claim because he has neither proven that his counsel acted unreasonably nor that he was prejudiced by his counsel's actions to a point that he would not have taken the plea deal. *See United States v. Grant*, No. CR 16-00172-01, 2021 WL 3779845, at *3 (W.D. La. Aug. 24, 2021).

Next, Uba complains that his counsel was ineffective for failing to object to the PSR and the use of relevant conduct in determining his United States Sentencing Guidelines range. The evidence shows that Uba's attorney filed objections to the PSR asserting that Uba should not be held responsible for the intended loss amount of the entire conspiracy. Dkt. 205-2. However, in his Affidavit, Myers testified that after he forwarded his objections to the PSR to the Government, AUSA Mike Galdo informed him that in a similar but unrelated case, Judge Pitman expressed that a similar plea agreement was too light, and that any objections might cause Judge Pitman to decide to implement a higher sentence than the non-binding recommendation of 36 months. Myers discussed the situation with Uba, and they decided to withdraw the objections. Dkt. 205-3 at 6. Myers testified that in his opinion, he believed Uba would have been found guilty at trial. *Id.* at 2. Additionally, he testified that the Government had evidence[1] connecting Uba to the conspiracy

---

[1] Uba makes much in his Reply about a receipt from a mailbox that was discovered after searching his wife's apartment. Myers testified that the Government turned over no evidence resulting from a search of Uba's wife's apartment, and the Government only relied on statements from Uba's wife as evidence. Dkt. 205-3.

through fake IDs that surfaced with his picture, call detail records, bank transactions, IP addresses, witness statements, and the testimony of cooperating co-defendants. *Id.* at 2.

Counsel's "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004). In this case, commenting on the AUSA's justification of the agreement to a 36-month sentence, Judge Pitman stated at Uba's sentencing hearing, "as I am sure your lawyer has told you, I've expressed on many occasions to your codefendants that I do not believe that a guideline sentence of 108 to 135 months is excessive and if anything, for some of you, it's not adequate … you came along at a good time with a good lawyer who advocated well with the Government and you would be looking at spending the next ten years in prison without the arrangement you've made." Dkt. 205-4 at 14-15. Uba has failed to show deficient performance on the part of counsel for his strategic decision to withdraw his objections to the PSR and protecting Uba's 36-month plea deal. Additionally, he has failed to show prejudice, as he received a below-Guidelines sentence.

Lastly, Uba complains that his counsel was ineffective for failing to consult with him about his right to appeal or about filing a notice of appeal. Dkt. 198 at 5. When a defendant is denied the opportunity to appeal due to ineffective assistance of counsel, the defendant is entitled to an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001). On November 17, 2021, the undersigned held an evidentiary hearing regarding Uba's claim that Myers failed to adequately consult with him about the possibility of the appeal. Both Uba and Myers testified at the hearing.

The undersigned assesses the credibility of Uba and Myers regarding the issue of whether Myers had a constitutionally imposed duty to consult with Uba about the possibility of an appeal. *See Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980) (discussing the deference given to a

judge who conducted an evidentiary hearing based on a habeas corpus claim and that judge's authority and discretion to make credibility findings based upon hearing and observing witness testimony). *See also Portillo-Guerrero v. United States*, No. 1:19-CV-82, 2020 WL 6922649, at *7-8 (S.D. Tex. Oct. 29, 2020), report and recommendation adopted, 2020 WL 6887780 (S.D. Tex. Nov. 24, 2020), and report and recommendation adopted, 2020 WL 7024857 (S.D. Tex. Nov. 30, 2020), order amended and superseded, 2021 WL 183440 (S.D. Tex. Jan. 19, 2021), and report and recommendation adopted, 2021 WL 183440 (S.D. Tex. Jan. 19, 2021) (finding attorney's testimony that he was never asked to file an appeal credible and that Petitioner's testimony was not credible, thereby failing to carry Petitioner's burden by a preponderance of the evidence).

"There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Nor is there any constitutional requirement that counsel consult with the defendant about an appeal in every case. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). "'Consulting' is a term of art that means advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citation and internal quotation marks omitted). A constitutionally imposed duty arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that he is interested in appealing. *Flores-Ortega*, 528 U.S. at 480. "[C]ourts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 477 (citation

and internal quotation marks omitted). As discussed below, neither ground is present here and thus no duty to consult ever arose.

Both Uba and Myers testified that they met in person on February 4, 2020, and that Uba did not request that Myer file an appeal, and they did not discuss Uba's appellate rights. Uba testified that he was dissatisfied with his sentence, and that he was dissatisfied with the amount of restitution imposed by the District Court, and that he believed he was going to receive a sentence of 18 to 24 months. When asked about whether he communicated this to his attorney, Uba stated that he asked Myers about the possibility of getting a lower sentence through cooperation. Myers testified that Uba did ask about the possibility of getting a lower sentence through cooperation, which Uba had rejected as a possibility before. They discussed it and decided that Uba's cooperation would make no difference because of Judge Pitman's sentencing proclivities and statements on the record that he believed that the Government's recommended sentence for Uba was too low, despite sentencing Uba to that agreed amount.

Myers also testified that he never represented to Uba that he would receive a sentence of 18 to 24 months, but that those numbers came up in the context in the scope of the relevant conduct in issue for Sentencing Guidelines purposes, and that Uba was informed that the sentence could be higher or lower than the Government's recommended sentence. Myers testified that Uba was neither happy nor outraged about his sentence, and gave no indication that he wanted to appeal at their February 4, 2020, meeting. Myers also testified that he was in contact with Uba after this date about the return of personal property seized by the Government, and neither Uba nor any of his family or friends reached out to him or communicated a desire to appeal Uba's sentence.

In this case, there is no reason to think a rational defendant would want to appeal. First, despite his statements to the contrary in his Petition, Uba pled guilty and waived his right to appeal

his sentence in his guilty plea, Dkt. 124, which he acknowledged in court that he had read, reviewed with his lawyer, and understood. Dkt. 205-1 at 12 (stating "your agreements also include waiver of appeal provisions. So by that provision, if your plea agreement is accepted, you will not have the right to either file a direct appeal or a separate proceeding, challenging either your conviction or your sentence"). This indicates that Uba sought to end the judicial proceedings. *Flores-Ortega*, 528 U.S. at 480.

Additionally, Uba has not identified any nonfrivolous grounds for appeal. He asserts that "Myers … should have recognized that I had nonfrivolous grounds to appeal based on the charges that existed due to knowledge that there was available testimony to exonerate me, or at least partially exonerate me." Dkt. 198 at 7. Uba does not identify any exculpatory evidence that would support this assertion. Moreover, his reference to "partial exoneration" seems to be his conclusion that he could have been held responsible for less relevant conduct than his Guidelines range was based because the low profit he made on the conspiracy. However, as a member of the conspiracy, the Sentencing Guidelines hold each participant responsible for the "reasonably foreseeable pecuniary harm," U.S.S.G. § 2B1.1, and that is not limited to just Uba's gain. Uba received a 36-month sentence out of a potential 20-year sentence. An unlikely and evidentiarily unsupported "partial exoneration" is not a rational basis for an appeal in light of: (1) Uba's low sentence and (2) the warning from the District Court that in the future such low sentences would be hard to come by.

The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). Uba pled guilty and his sentence was well below the guideline range, and he received the sentence he bargained for. *Pham*, 722 F.3d at 324  (duty to consult is assessed in light of all information counsel

knew or should have known; whether conviction followed a trial or guilty plea is highly relevant, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained). Uba has failed to establish that a rational defendant would have wanted to appeal.

Also, Uba did not reasonably demonstrate to counsel that he was interested in appealing. Myers states in his Affidavit and at the evidentiary hearing that he met with Uba on February 4, 2020, after Uba's sentencing, and Uba did not express an interest in appealing. Dkt. 205-3. This is despite Judge Pitman's directive to Uba to talk to Mr. Myers if he wished to appeal his sentence and find out the timelines for doing so. Dkt. 205-4 at 16. Uba does not contravene Myers's assertion that they met on that date, or claim he expressed a specific interest in appealing at that time.

Myers testified that while Uba was unhappy about his sentence, almost all criminal defendants are, and Uba did not seem particularly upset or surprised. The undersigned finds Myer's testimony on this issue credible, especially since Uba offered no controverting testimony. As evidence that he communicated a desire to appeal, Uba offered only his testimony that he questioned Myers whether he could cooperate after the fact, which they discussed, and decided would be pointless in light of Uba's low sentence. Additionally, Myers testified that they had discussed this possibility before sentencing, and Uba had rejected it. Further, the undersigned finds that Uba's testimony that he believed he would receive a sentence of between 18 to 24 months is not credible. There was no reason for Myers to mislead his client about his possible sentence, and Uba acknowledged that he was aware of the factual basis, Guidelines range, and the Government's recommended sentence at his guilty plea hearing. Moreover, Uba did not testify that he

communicated to Myers that he thought he was going to receive a sentence of 18 to 24 months or was unhappy with the amount of restitution imposed.

The undersigned finds that Uba offered no testimony of any actions he communicated to Myers that would have alerted Myers of a desire to appeal. "The Fifth Circuit has concluded that a defendant being shocked or angered at a sentence does not reasonably demonstrate interest in filing an appeal." *Escalante v. United States*, No. B:14-481-1, 2016 WL 5947375, at *10 (S.D. Tex. Sept. 9, 2016) (citing *Pham*, 722 F.3d at 325), report and recommendation adopted, No. CV B-15-099, 2016 WL 5947298 (S.D. Tex. Oct. 13, 2016). In order for a movant to "reasonably demonstrate" that he wanted to appeal, he must show he gave "some specific indication" to counsel that he wanted to appeal. *See id.* Uba did not express even shock or anger at his sentence, his testimony and that of Myers supports that he showed nothing more than mild discontent, and he did not specifically indicate that he wanted to appeal.

In *Pham*, the Fifth Circuit found a duty to consult where defendant Pham, who did not speak English, pleaded guilty pursuant to an agreement that contained an appeal-waiver provision. Pham had informed his attorney prior to entering his guilty plea, that he believed he would receive probation because of the possible imposition if a safety valve provision, although he was ultimately denied the safety valve and received the statutory minimum of five years. The Fifth Circuit held that Pham's attorney had not sufficiently consulted with him because he knew Pham expected probation, and a visibly upset Pham expressed an interest in taking action "to get less time," immediately after sentencing. 772 F.3d at 324.

In *United States v. Calderon*, the Fifth Circuit revisited and distinguished *Pham*, finding that "Pham's counsel's failure to consult with him following his sentencing was unreasonable because changing circumstances had raised the possibility of a new claim," but in Calderon's case,

14

no duty to consult existed because "nothing material changed" after the defendant signed the appeal waiver. 665 F. App'x 356, 366 (5th Cir. 2016) (per curiam). "In Calderon's case, however, his claim concerns whether the Plea Agreement's factual basis was sufficient to support his guilty plea. The entire basis for that was claim was known at the time he entered his guilty plea." *Id.* at 366.

In this case, like *Calderon*, nothing material changed after Uba signed the appeal waiver. He had reviewed the PSR and possible range of sentences with his attorney, and was aware of the possible range of his sentence. In *Pham*, the Fifth Circuit noted that Pham's counsel might have been reasonable in not consulting with him on an appeal if he had received a sentence lower than the statutory mandatory minimum. 772 F.3d at 325. In this case, Uba in fact received lower than the statutory minimum sentence. Additionally, Uba has not identified any material change that occurred after he signed the appellate waiver. Accordingly, the credible evidence does not reflect that Uba "reasonably demonstrated to [counsel] that he was interested in appealing." *Id.* at 324. Counsel was not deficient for failing to consult with Uba on the issue of whether to file an appeal.

Moreover, even if Myers was deficient, Uba's claim still fails because he cannot establish prejudice. With regard to prejudice on a failure to consult claim, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485. As outlined above Uba has presented no nonfrivolous grounds for appeal.

In *United States v. Bejarano*, 751 F.3d 280, 286-87 (5th Cir. 2014), the Fifth Circuit affirmed the district court's determination on the basis that the movants could not "demonstrate

prejudice" as to their claims that counsel failed to "sufficiently consult with them about an appeal." The defendants there relied "on two facts to establish reasonable probability: that they expressed interest to counsel in appealing, and [one defendant's] testimony that he would have appealed." *Id.* at 286. But, as the Supreme Court held in *Flores-Ortega*, evidence that a defendant "'sufficiently demonstrated to counsel his interest in an appeal,'" by itself, "'is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'" *Bejarano*, 751 F.3d at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). And, as to the defendant's testimony at the evidentiary hearing in *Bejarano* that he would have appealed, the Fifth Circuit relied on the district court's findings that "'[n]othing in the record support[ed]' this supposition, which the district court found to be "'self-serving' and 'implausible in light of the other evidence.'" *Id.* at 287; *see also id.* (finding it relevant that the defendants "waited 'almost a full year after sentencing' to file their petitions, post-sentencing actions that some courts have concluded 'indicate [the defendant] was unlikely to have' timely appealed" (quoting *Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010))).

In this case, Uba offered no credible testimony that he would have timely appealed his sentence had Myers consulted with him. He relies on his claim that he talked to his attorney about cooperating after he was sentenced, and his claim that he would have appealed his sentence had he known he could. Like in *Berjano*, nothing in the record supports the supposition that Uba would have timely filed an appeal if not for counsel's failure to consult. Uba waited eleven months to file a motion to vacate his sentence.[2] *See Flores-Ortega*, 528 U.S. at 485 ("promptly express[ing] a desire to appeal will often be highly relevant" in determining prejudice); *Bejarano*, 751 F.3d at 287. Moreover, Myers's uncontroverted testimony was that he was in contact with Uba and his

---

[2] He was sentenced on January 30, 2020, Dkt. 168, and waited until November 23, 2020, Dkt. 198, to move to vacate.

supporters after his sentencing and the February 4, 2020, meeting, and Uba never reached out to him about an appeal or to express unhappiness with his sentence. The evidence presented at the evidentiary hearing shows no action taken or other fact to suggest a reasonable probability that Uba would have timely appealed. *See Calderon*, 665 F. App'x at 366 (finding no *Strickland* prejudice because movant presented no evidence that he would have actually appealed, apart from his counsel's alleged failure to consult about an appeal). There is no evidence or credible testimony supporting that Uba would have timely appealed his sentence had Myers consulted with him.

## V. RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Chibuzor Stanley Uba's Motion to Vacate, Set Aside, or Correct Sentence, Dkt. 198. It is **FURTHER ORDERED** that this case is **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Robert Pitman.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir.

1996). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VII. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant.

A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve

encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability not be issued.

   **SIGNED** on November 19, 2021.

             _____
             DUSTIN M. HOWELL
             UNITED STATES MAGISTRATE JUDGE